HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
DEBORAH E. GONZALEZ (Bar No. 310153)
(E-Mail:  Deborah_Gonzalez@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
ALAN BRUCE PICHEL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 17-00100-RGK |
| Plaintiff, | |
| v. | **MOTION TO DISMISS COUNT THREE AND PORTIONS OF COUNT TWO OF THE INDICTMENT** |
| ALAN BRUCE PICHEL, | |
| Defendant. | Hearing Date:   January 22, 2018 |
| | Hearing Time:  1:30 p.m. |

TO: ACTING UNITED STATES ATTORNEY EILEEN DECKER AND ASSISTANT UNITED STATES ATTORNEY AMY POMERANTZ:

PLEASE TAKE NOTICE that on January 22, 2018, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Judge, Mr. Alan Bruce Pichel, will bring on for hearing the following motion to dismiss:

1

1

## MOTION

2    Mr. Pichel, by and through his attorney of record, Deputy Federal Public

3 Defender Deborah E. Gonzalez, hereby moves this Honorable Court for an order

4 dismissing portions of the indictment for failure to state a crime and as

5 unconstitutionally vague.  This motion is made pursuant to the Fifth Amendment to the

6 United States Constitution and Rule 12(b) of the Federal Rules of Criminal Procedure,

7 and is based upon the files and records in this case, the attached memorandum of points

8 and authorities, declaration, and exhibits, and any such further information as may be

9 presented to the Court.

10

11                                         Respectfully submitted,

12                                         HILARY POTASHNER
                                           Federal Public Defender
13

14

15 DATED:  December 18, 2017        By  */s/ Deborah E. Gonzalez*
                                      ─────────────────────────────
16                                    DEBORAH E. GONZALEZ
                                      Deputy Federal Public Defender
17                                    Attorney for ALAN BRUCE PICHEL

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES
## I. INTRODUCTION

Mr. Pichel is charged in an indictment with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a machine gun, in violation of 18 U.S.C. § 922(o).  The charges stem from his alleged possession of, *inter alia*, several "lower receivers."  (Dkt No. 1, Indictment, at 4-5.)  Firearms laws are complicated: courts have acknowledged that "firearms laws define terms in surprising ways, causing all sorts of problems."  *United States v. Bradley*, 892 F.2d 634, 637 (7th Cir. 1990).  This case presents one of the "problem[atic]" circumstances created by the maze of definitions in the firearms laws.  Through this motion, the defense requests that the Court dismiss Count Three and portions of Count Two because the charged lower receivers do not qualify as machine guns or firearms, respectively, under the firearms definitions.  As the government has elsewhere conceded, the lower receivers of AR15-type weapons such as those charged in Counts Two and Three do not satisfy the legal definition of a "receiver" (*see United States v. Jimenez*, 191 F. Supp. 3d 1038, 1041 (N.D. Cal. June 6, 2016) (also provided as Exhibit 3 to the Declaration of Deborah E. Gonzalez, filed in support of this motion)): possession of them therefore is not prohibited by Section 922(g) or (o).  Moreover, because the charged lower receivers do not satisfy the definition of a "receiver," Section 922 and its implementing regulations are unconstitutionally vague as applied to Mr. Pichel, and these aspects of the Indictment must be dismissed under the Due Process Clause as well.

## II. FACTS

The indictment alleges that on February 19, 2017, Mr. Pichel knowingly possessed, *inter alia*, six "Anderson Manufacturing, completed lower receiver[s], model AM15," (Indictment, at 4 (Count Two)) and "seven lower receivers milled to machine gun specifications." (Indictment, at 5 (Count Three)).  All of these "lower receivers" are of the AR-15 type.  (Declaration of Daniel O'Kelly in Support of Motion

3

to Dismiss, ¶¶ 5(a), 6(a); Exhs. B and C.)  The lower receivers of AR-15 type weapons provide housing for the hammer and the firing mechanism of the weapon.  (O'Kelly Decl., ¶¶ 5(c), 6(c).)  They do not house the bolt or breechblock.  (*Id*.)

### III. ARGUMENT

**A.   Count Three and Portions of Count Two Must Be Dismissed for Failure to State a Crime**

**1.   Count Three: the Charged Lower Receivers Are Not Machine Guns[1]**

Section 922(o) does not define "machinegun."  That term is defined by reference to the National Firearms Act ("NFA").  18 U.S.C. § 921(a)(23).  The NFA defines "machinegun" as

> any weapon which shoots, is designed to shoot, or can be readily restored
> to shoot, automatically more than one shot, without manual reloading, by a
> single function of the trigger.  The term shall also include the frame or
> receiver of any such weapon, any part designed and intended solely and
> exclusively, or combination of parts designed and intended, for use in
> converting a weapon into a machinegun, and any combination of parts
> from which a machinegun can be assembled if such parts are in the
> possession of under the control of a person.

26 U.S.C. § 5845(b).

This definition can be broken down into two halves: 1) if an item is a fully assembled weapon, it may be a machine gun; or 2) if an item is a part it may also be considered a machine gun.  (*See* Exh. 1 to Gonzalez Decl.)  The lower receivers

---

[1] A diagram of the following discussion is attached as Exhibit 1 to the Declaration of Deborah E. Gonzalez, filed in support of this motion.  The green boxes on that diagram represent the only portions of the definition that the lower receivers in this case satisfy; portions which are insufficient to qualify the lower receivers as machineguns.

charged in Count Three cannot qualify as machine guns under the first half of this definition because they are not fully assembled weapons: they are single pieces of metal that cannot function as a gun on their own.  (O'Kelly Decl., ¶ 5(b).)   On their own, they do not shoot automatically, they are not designed to shoot automatically, and they cannot be restored to shoot automatically because they were never part of a full weapon to begin with.  (*Id*.)

The lower receivers charged in Count Three also cannot qualify as machine guns under the second half of the definition.   The second half of the definition sets forth three ways that parts can be considered machineguns: A) a part can be a machine gun if it is "the frame or receiver of" a machine gun; B) a part can be a machinegun if it is "designed solely or exclusively . . . for use in converting a weapon into a machinegun" or if it is a "combination of parts designed and intended[] for use in converting a weapon into a machinegun"; or C) "any combination of parts from which a machinegun can be assembled" can be a machinegun "if such parts are in the possession or under the control of a person."  26 U.S.C. § 5845(b); *Bradley*, 892 F.2d at 636 ("[P]arts may be machine guns in any of three ways.").  (*See also* Exh. 1 to Gonzalez Decl.)

The lower receivers charged in Count Three are not frames or receivers.  The term "[f]rame or receiver" has been defined by regulations crafted by the ATF.  *See* 27 C.F.R. § 479.11; *Jimenez*, 191 F. Supp.3d at 1040 (noting that the Government agrees "the definition of receiver for purposes of [Section 922(o)] is stated in the Code of Federal Regulations") (*see also* Exh. 1 to Gonzalez Decl.).  Section 479.11 defines a frame or receiver as, "[t]hat part of a firearm which provides housing for [1] the hammer, [2] bolt or breechblock and [3] firing mechanism, *and* [4] which is usually threaded at its forward portion to receive the barrel."  27 C.F.R. § 479.11 (emphasis added).

First, as the government has conceded in a similar case, lower receivers like those allegedly possessed by Mr. Pichel in Count Three do not qualify as "receivers" under the regulation because they only satisfy part of this definition.  Many weapons

have a single receiver.  Many do not.  Some have two; an upper receiver and a lower receiver.  These are called "split receiver" weapons.  As noted, AR-15 type weapons have a split receiver.   (O'Kelly Decl., ¶ 5(a).)  The lower receivers charged in this case provide housing for the hammer and the firing mechanism.  But they do not house the bolt or breechblock and they are not threaded at their forward portion to receive the barrel.  (O'Kelly Decl., ¶ 5(c).)  Nor could they ever house the bolt or breechblock or be threaded at their forward position to receive the barrel: it is the *upper* receiver of an AR-15 type weapon that houses the bolt or breechblock and is threaded to receive the barrel.  (O'Kelly Decl., ¶ 5(c).)

In *Jimenez*, the defendant was charged with possession of a machinegun and the alleged machinegun was—as here—an AR-15 type lower receiver.  In that case, the government "concede[d] that th[e] format [of the lower receiver of an AR-15 type rifle] 'does not perfectly fit the CFR section definition'" of "receiver."  *Jimenez*, 191 F. Supp. 3d at 1041 (quoting the government's briefing).  Regarding the Department of Justice's decision not to appeal the subsequent order dismissing the indictment in *Jimenez*, then-Attorney General Loretta Lynch explained in a letter to the Speaker of the House of Representatives that the lower receiver in that case did not satisfy the regulatory definition of receiver.  Therefore, she indicated that, "[t]o the extent that the Bureau of Alcohol, Tobacco, Firearms and Explosives believes that the definition [set forth in Section 479.11] should encompass the lower receiver of an AR-15 or should otherwise be modified or clarified, the appropriate course is regulatory or administrative action, not an appeal of the district court's decision in this case."  (Letter from Loretta Lynch to Paul Ryan regarding *United States v. Jimenez*, September 8, 2016, available at https://www.justice.gov/oip/foia-library/osg-530d-letters/9_8_2016/download (a copy of this letter has also been attached as Exhibit 4 to the Declaration of Deborah E. Gonzalez, filed in support of this motion).

Second, the lower receivers charged in Count Three are not conversion parts because they are not intended "solely and exclusively" to convert a weapon into a

6

machine gun: the lower receivers can also operate as a semi-automatic weapon or single shot firearm.  (O'Kelly Decl., ¶ 5(d).)  Third, the lower receivers are not a combination of parts designed and intended for use in converting a weapon into a machine gun.  And, fourth, nor are they a combination of parts from which a machine gun can be assembled.  The indictment charges Mr. Pichel with possession of a single part of a weapon—the receivers—not a combination of parts.  (O'Kelly Decl., ¶ 5(e).)  For all of the foregoing reasons, the lower receivers charged in Count Three do not qualify as machine guns and Count Three must be dismissed.  At the very least, given the ambiguity in this maze of statutory and regulatory definitions, the rule of lenity compels the Court to conclude that the lower receivers allegedly possessed by Mr. Pichel are not machineguns.  *United States v. Thompson*, 504 U.S. 505 (1992).

### 2.    Count Two: the Charged Lower Receivers Are Not Firearms[2]

The Court should also dismiss that portion of Count Two that charges that certain other lower receivers Mr. Pichel allegedly possessed are firearms because these lower receivers do not qualify as firearms.  Section 922(g) does not define "firearm."  That term is defined by reference to the NFA. 18 U.S.C. § 921(a)(3).  The NFA defines "firearm" as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device [such as a bomb, grenade, rocket, etc].

26 U.S.C. § 921(a)(3).

---

[2] A diagram of the following discussion is attached as Exhibit 2 to the Declaration of Deborah E. Gonzalez, filed in support of this motion.  The green boxes on that diagram represent the only portions of the definition that the lower receivers in this case satisfy; portions which are insufficient to qualify the lower receivers as firearms.

The Anderson Manufacturing AM15 lower receivers charged in Count Two do not satisfy subsection (A) of this definition because they are not a complete weapon. On their own, they are not designed to expel a projectile.  Nor can they be converted to expel a projectile.  (O'Kelly Decl., ¶ 6(b).)  The AM15 lower receivers do not satisfy subsection (B) of this definition because they are not frames or receivers for the same reasons the lower receivers charged in Count Three do not qualify as frames or receivers; the AM15 lower receivers are of the AR-15 type, which means they only satisfy half of the regulatory definition of a receiver (they only provide housing for the hammer and the bolt or breechblock; they do not provide housing for the firing mechanism and are not threaded at their forward portion to receive the barrel). (O'Kelly Decl, ¶ 6(c).)  Finally, the AM15 lower receivers are not mufflers or silencers. Nor are they destructive devices.  (O'Kelly Decl., ¶ 6(d).)  Accordingly, the lower receivers charged in Count Two do not qualify as firearms and the portions of Count Two charging Mr. Pichel with possession of these lower receivers must be dismissed.

**B.  Even if the Court Finds that Counts Two and Three State a Crime, the Indictment Must Be Dismissed because the Definition of "Receiver" Is Unconstitutionally Vague As Applied to Mr. Pichel**

As the Supreme Court has acknowledged, "[a]s weighty as th[e] concern [for combatting crime] is . . . it cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity."  *Kolender v. Lawson*, 461 U.S. 352, 361 (1983).  In a vagueness challenge, "the test is whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme."  *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122-23 (9th Cir. 2011).  In an as-applied challenge, the inquiry turns on whether the legal framework "provided adequate notice to [a particular defendant] that his particular conduct was proscribed."  *United States v. Harris*, 705

8

1  F.3d 929, 932 (9th Cir. 2013).  In criminal cases, "the requirement for clarity is

2  enhanced."  *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009).

3         Assuming for purposes of this motion that Mr. Pichel knowingly possessed the

4  lower receivers charged in Counts Two and Three, he did not have fair notice that this

5  conduct was unlawful.   Nothing in Section 921, 922, or the Code of Federal

6  Regulations gave him fair notice that possessing the lower receiver of an AR-15 type

7  rifle would qualify as the criminal possession of a firearm or a machine gun.   This is

8  because, as discussed *supra*, the lower receiver of an AR-15 type rifle only satisfies

9  half of the regulatory definition of a receiver.

10        The government essentially "acknowledg[ed]" in *Jimenez* that "even if [Mr.

11  Pichel] had read the rules and regulations, he could not have known that the lower

12  receiver of the AR-15 would be covered by them."  *Jimenez*, 191 F. Supp. 3d at 1041.

13  Indeed, several courts have found that the term receiver is so vague that "the

14  government gets to pick and choose who is covered . . . and who isn't."  *United States

15  v. Vest*, 448 F. Supp. 2d 1002, 1012 (S.D. Ill. 2006).   The vagueness of the definition is

16  demonstrated by the ATF's decision to interpret its regulation to cover the lower

17  receiver but not the upper receiver of the AR-15 even though the lower receiver only

18  satisfies half the regulatory definition and even though the agency has concluded that

19  for *every other weapon* with a split receiver, it is the upper receiver that qualifies as the

20  "receiver."  (O'Kelly Decl., ¶ 7.)  For example, FAL-type rifles, like AR-15 type rifles,

21  have upper and lower receivers that each only satisfies the same fifty percent of the

22  definition.  For FAL-type rifles, however, the ATF has determined that it is the upper

23  receiver that qualifies as the "receiver," and therefore the firearm.  (O'Kelly Decl., ¶

24  7(a); *see also id.* ¶ 7(b)-(e) (providing other examples of the ATF's internal

25  inconsistency in its interpretation of Section 479.11).)  The "element of randomness in

26  the ATF's enforcement practices" appears to evidence "a degree of confusion within

27  ATF about how to handle split receivers under the law."  *Jimenez*, 191 F. Supp. 3d at

28  1042-43.

9

1    If firearms experts (*see* O'Kelly Decl., ¶ 7) and even the ATF are confused by

2    the definition of receivers, "[h]ow would any citizen, and specifically [Mr. Pichel], be

3    on fair notice of these nuances?" *Jimenez*, 191 F. Supp. 3d at 1044.  Because Mr.

4    Pichel did not have adequate notice that possessing the lower receiver of an AR-15 type

5    weapon could be considered a violation of Section 922(g) and 922(o), this Court should

6    dismiss Count Three and the relevant portions of Count Two as unconstitutionally

7    vague.

8                              **IV.  CONCLUSION**

9          For the foregoing reasons—because the "lower receiver" of an AR-15 type rifle

10   is not the same as a "receiver" under Section 479.11—the Court should grant this

11   motion.

12

13                                    Respectfully submitted,

14                                    HILARY POTASHNER
                                      Federal Public Defender
15

16   DATED:  December 18, 2017        By   */s/ Deborah E. Gonzalez*
                                      _____
17                                    DEBORAH E. GONZALEZ
                                      Deputy Federal Public Defender
18                                    Attorney for ALAN BRUCE PICHEL

19

20

21

22

23

24

25

26

27

28